UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRST TENNESSEE BANK, NATIONAL ASSOCIATION, a National Banking Association, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 11 CV 01539 |
| v. | ) ) | Judge Edmond E. Chang |
| LAWYERS TITLE INSURANCE, CORPORATION, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff First Tennessee Bank brought this diversity suit against Defendant Lawyers Title Insurance, seeking a declaratory judgment and damages based on common law breach of contract, estoppel, and the Illinois Insurance Code, 215 ILCS 5/155. R. 14.[1] Lawyers Title has filed a motion to dismiss on all claims. R. 17. For the reasons explained below, the Court grants the motion to dismiss.

**I.**

At this stage of the litigation, Plaintiff's allegations are taken as true and reasonable inferences are drawn in its favor. On February 16, 2005, First Horizon Home Loans (a division of First Tennessee[2]) loaned Roosevelt Garrett $83,200, which

---

[1]Citation to the docket is "R." followed by the docket entry. The Court has subject matter jurisdiction over the case based on diversity jurisdiction. *See* 28 U.S.C. § 1332.

[2]In the pleadings, the plaintiff uses the names First Horizon and First Tennessee interchangeably. For convenience's sake, the Court will use the name First Tennessee throughout the opinion.

was secured by an ostensible second mortgage on Garrett's property. R. 14 ¶¶ 6, 14. Before First Tennessee agreed to lend the money to Garrett, it purchased title insurance from Lawyers Title—a policy that would insure against any losses or damage due to unknown senior liens. *Id.* ¶¶ 7-8.

After loaning the money to Garrett, First Tennessee learned that it did not, in fact, have the *second* mortgage lien on Garrett's property. *Id.* ¶ 15. On February 8, 2005, a superior lien had been granted to Countrywide Home Loans, and two weeks later, was recorded by the Cook County Recorder of Deeds. *Id.* As a result, First Tennessee's loan was actually secured by the *third* mortgage lien on the property. *Id.* ¶ 16. Eventually, Garrett defaulted on his first mortgage. R. 14 ¶ 22. The mortgagee with the senior lien has begun judicial foreclosure proceedings and First Tennessee is a defendant in that action. *Id.* Lawyers Title refused to defend or indemnify First Tennessee. *Id.* ¶ 26. Because of that refusal, First Tennessee brought this lawsuit, eventually filing an amended complaint asserting six counts. R. 14. Lawyers Title has moved to dismiss under Rule 12(b)(6). R. 17.

## II.

Under the Federal Rules of Civil Procedure, a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the

2

merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 514 (2002)).

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 129 S. Ct. at 1950.

### III.

### A.

The threshold question here is what "losses" the title-insurance policy covers. First Tennessee argues that under *Citicorp Sav. of Illinois v. Stewart Title Guar. Co.*, 840 F.2d 526 (7th Cir. 1988), the policy guarantees the *full* amount of the Garrett loan. R. 21 at 1-2. Lawyers Title argues that the policy is a contract of indemnity and that

3

it is only liable for the *difference* in the value between what First Tennessee could recover as the second lienholder versus what it could recover as the third lienholder. R. 17 at 7-8. And because the foreclosure sale has not yet completed, Lawyers Title argues, First Tennessee has not sustained a compensable loss. *Id.* at 7.

In *Citicorp*, a bank loaned $27,000 to a third-party secured by property. 840 F.2d at 528. The defendant, a title insurance company, issued a policy that insured against any loss based on the invalidity or unenforceability of the lien. *Id.* The policy also described the amount of the insurance as $27,000. *Id.* Soon after, the bank discovered that the debtor was incompetent, which made the mortgage contract voidable by the debtor. *Id.* at 529. The parties disputed whether this made the contract invalid or unenforceable, but the in the end, the title insurance company acquired the title deed to the property and tendered it to the bank. *Id.* at 528. The bank rejected the deed because it believed that it was entitled to the full $27,000 in damages. *Id.*

The Seventh Circuit held that the title insurance company was liable for the full $27,000. *Id.* at 530. The Court noted that the policy in question insured against the "invalidity or unenforceability of the lien," and the insurance policy described the amount of insurance as $27,000. *Id.* at 528 n.1. And because the mortgage contract was voidable by the guardian of the debtor, the Court determined that the lien was indeed unenforceable and thus the insurance company was liable for the full amount of the loan. *Id.* at 529-30.

*Citicorp* is distinguishable from this case, and distinguishable in a way that highlights why this case must be dismissed. The policy issued by Lawyers Title states that the policy insures against the following three conditions:

> The Grantee not being the named grantee on the last document recorded in the public records purporting to vest title to the fee estate in the land or the description of the land in this policy not being the same as that contained in said document.
>
> Any monetary lien affecting title, recording in the public records.
>
> Any ad valorem taxes or assessments of any governmental taxing authority which constitute a lien on the title and which appear on date of policy in the official ad valorem tax records where the land is located.

R. 17, Exh. A at 2. None of these conditions constitute an enforceability or validity clause.[3] The policy here is materially different than the policy in *Citicorp* because there the insurance company *guaranteed* the complete validity and enforceability of the mortgage. The plaintiff in *Citicorp* was not merely protected against losses caused by unknown senior liens; it was protected against the unenforceability of the lien itself. *See Citicorp*, 840 F.3d at 528-30. In contrast, First Tennessee's policy only protects

---

[3] In its response brief, First Tennessee argues that Lawyers Title breached its duty to defend. R. 21 at 8-9. But First Tennessee's argument primarily hinges on *Citicorp*'s applicability to this policy, *see id.* at 8, and that case does not control here, for the reasons explained above. Moreover, although the policy promises to pay for defense of the insured, that promise is limited "to the extent provided in the Conditions and Stipulations," R. 17, Exh. A at 2. The Conditions include an option by Lawyers Title to end its defense obligation by offering "to pay or otherwise settle with the insured claimant [for] the loss or damage provided for under the policy, together with any costs, attorneys' fees and expenses," *id.*, Exh. A at 4 ¶ 4(b)(ii), and Lawyers Title has decided to exercise that option.

5

against *loss* caused by unknown senior liens, and does not guarantee the validity or enforceability of the loan itself. *Citicorp* is distinguishable.[4]

Even if *Citicorp* were not distinguishable, the principle underlying its holding, at least as characterized by First Tennessee, was rejected by the Illinois Supreme Court in *First Midwest Bank v. Stewart Title Guaranty Company*, 843 N.E.2d 327 (Ill. 2006). In *First Midwest*, the Illinois Supreme Court concluded that a title insurance company is generally *not* an "information provider" that provides an "abstract of title." *Id*. at 340-41. Instead, a title insurance policy merely "insure[s] against the risk of undiscovered defects, liens, and encumbrances." *Id*. at 336. Lawyers Title persuasively argues that *First Midwest* rejected the implicit premise in *Citicorp* (again, at least as interpreted by First Tennessee) that title insurance compensates lenders for any losses arising out of a debtor's default.[5] *First Midwest* explains that title insurance compensates for losses caused by unknown risks in the chain of title, not for losses arising from a default on the loan. Losses caused by a surprise, more-senior lien can be measured only after the foreclosure sale of the secured property.[6] Only then can the

---

[4]First Tennessee's argument, R. 21 at 5, that a lender's loss is sustained at the moment of discovery is rejected because, as discussed above, that rule applies at most only to policies that guarantee validity or enforceability.

[5]First Tennessee argues that *First Midwest* is distinguishable because it involved a negligent misrepresentation claim. R. 21 at 12-13. But *First Midwest*'s holding is premised on a specific definition of the duties of title insurance companies, that is, those companies do not generally provide an abstract of title. 843 N.E. 2d at 336-37. First Tennessee's argument here cannot be squared with the Illinois Supreme Court's view of what title insurance policies actually cover.

[6]A few other cases in other jurisdictions have also held that losses insured by title insurance are not compensable until the foreclosure sale. *E.g., First Internet Bank of Indiana v. Lawyers Title Ins. Co.*, No. 1:07-cv-0869, 2009 WL 2092782, at *6 (S.D. Ind., July 13, 2009).

6

parties know whether the seniority of the lien actually caused a loss. This case provides an example: if (after the foreclosure sale) First Tennessee would incur a loss on the loan even as the *second* lien-holder, it matters not that First Tennessee was in fact the third lien-holder; the loss arises from the deficiency in the foreclosure sale to cover the first lien, and not from the now-realized risk that there was a second lien superior to First Tennessee's lien.

**B.**

Based on the discussion above, it should come as no surprise that Lawyers Title also argues that because First Tennessee has not yet sustained a compensable loss, its claims must fail. R. 17 at 7-8. In addition to the generally-applicable legal principles described above, Lawyers Title also bases the argument on specific language in Section 5(a)(iii) of the policy here, contending that a loss is sustained only after the secured property is sold. *Id.* at 7. According to Section 5(a)(iii), "The liability of the Company under this policy shall not exceed the least of":

> If the loss is caused by a lien insured against by this policy, the difference between the value of the estate or interest in the land encumbered by the insured's mortgage without the lien insured against and the value of that estate or interest subject to the lien insured against by this policy.

R.17, Exh. A at 4 ¶ 5.

---

"Since the uninsured lender suffers loss only if the note is not repaid, the discovery of an insured-against lien does not trigger recognition of loss . . . an anticipated loss cannot be measured until completion of foreclosure because only then is there certainty the lender will not be paid in full." *Karl v. Commonwealth Land Title Ins. Co.*, 20 Cal. App.4th 972, 983-84 (Cal. App. Ct. 1993).

7

First Tennessee counters with two arguments. R. 21 at 9-10. The first is that Lawyers Title's argument is foreclosed by *Citicorp*, but that argument is rejected, *see supra* at § II.A. The second argument is that because Section 5(a)(iii) does not explicitly state when is the right time to measure damages, this Court should construe the ambiguity of the provision in favor of First Tennessee and measure damages from the moment of discovery. *Id*. at 10.

"A court's primary objective in construing the language of the policy is to ascertain and give effect to the intentions of the parties as expressed in their agreement." *American States Ins. Co. v. Koloms*, 687 N.E.2d 72, 75 (Ill. 1997). It is true that Illinois courts construe ambiguities in insurance contracts in favor of the insured. *Id*. Here, First Tennessee points out that Section 5(a)(iii) does not describe when exactly to measure damages. R. 17, Exh. A. But the policy does specify that, for a loss caused by a lien insured against by the policy, the loss is the difference between the value of the estate without the lien and "the value of that estate or interest subject to the lien insured against by this policy," R. 17, Exh. A at 4 ¶ 5, and that difference in value is naturally measured at the time of the foreclosure sale, when it can be determined what value is leftover, if any, after the insured-against lien is applied to the property. In any event, the text of the policy does not, as First Tennessee argues, specify that the value of the loan is the measure of the loss.

And the absence of explicit text does not necessarily mean that the provision is ambiguous. Ambiguous provisions are those that are susceptible to more than one meaning. *Koloms*, 687 N.E.2d at 75. First Tennessee points to the first page of the

8

policy, where it is expressly stated that Lawyers Title "insures, *as of [the] Date of [the] Policy*, against loss or damage. . ." R.14, Exh A at 2 (emphasis added). This statement, according to First Tennessee, conflicts with Section 5(a)(iii) because it indicates that damages should be measured from February 2005—the date of the policy. R. 21 at 10-11.

This argument is unconvincing. The "Date of [the] Policy" provision merely describes the date the insurance policy takes effect—not when the measure of damages should be calculated. First Tennessee is unable to point to any other terms or provisions in the policy that present alternative interpretations of Section 5(a)(iii). Thus, the terms of the contract must be given their plain and ordinary meaning, *see Outboard Marine Co. v. Liberty Mutual Insurance Co.*, 607 N.E. 2d 1204, 1212 (Ill. 1992), and here that means that the value of the estate of the land subject to the lien insured-against must be determined at the time of the foreclosure sale.

## C.

First Tennessee also includes three claims based on estoppel theories of recovery. R. 14 ¶¶ 41-68. Under Illinois law, when the parties have entered into an express contract, the contracting parties cannot pursue quasi-contractual claims. *Prodromos v. Poulos*, 560 N.E.2d 942, 948 (Ill. App. Ct. 1990). "[I]f a party's performance under a written contract is the same performance which satisfies the requirement of detrimental reliance, then that party is barred from seeking redress under the doctrine of promissory estoppel." *Prentice v. UDC Advisory Services, Inc.* 648 N.E.2d 146, 150 (Ill. App. Ct. 1995) (citing *Wagner Excello Foods, Inc. v. Fearn Int'l,*

9

*Inc.* 601 N.E.2d 956 (Ill. App. Ct. 1992)). There is no question here that there exists a valid, enforceable contract; in fact, First Tennessee attached the contract to its amended complaint. R. 14, Exh. A. Therefore, First Tennessee cannot succeed on its claims that are based on estoppel.

## IV.

For the reasons discussed above, the complaint is dismissed with prejudice.[7]

ENTERED:

*/s/ Edmond E. Chang*

Honorable Edmond E. Chang
United States District Judge

DATE: April 17, 2012

---

[7] Count 6 alleges a violation of 215 ILCS 5/155, which allows for attorneys-fee shifting when an insurance company vexatiously and unreasonably delays the settlement of a claim. As discussed above, Lawyers Title has not failed to perform any contractual obligation.